Filing # 62988617 E-Filed 10/18/2017 11:59:21 AM

IN THE COUNTY COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

BELINDA BELAJONAS,
an individual,

    Plaintiff,

vs.                                    Case Number: 17-CC-41025

SECOND ROUND SUB, LLC,
a foreign limited liability company,

    Defendant.
_____/

## COMPLAINT

**COMES NOW**, Plaintiff, Belinda Belajonas (hereinafter, "Plaintiff" or "Belajonas"), by and through the undersigned counsel, and hereby sues the Defendant, Second Round Sub, LLC (hereinafter, "SRS"). In support thereof, Belajonas alleges:

## PRELIMINARY STATEMENT

This is an action for damages brought by Belajonas, a consumer, for SRS's violations of the Fair Debt Collection Practices Act, 15 United States Code, Section 1692, *et seq.* (hereinafter, "FDCPA"), which prohibits, among other things, debt collectors from engaging in abusive, misleading, false, deceptive, and unfair debt collection practices.

## JURISDICTION AND VENUE

1. This is an action for damages that exceeds $5,000.00 and is less than $15,000.00 exclusive of attorneys' fees and costs.

2. Jurisdiction of this Court arises under Rule 1.170 of the Florida Rules of Civil Procedure and 15 United States Code, Section 1692k(d).

1

3. Further, the FDCPA violations at issue in this action arise from the SRS's claim against Belajonas, filed in Hillsborough County, Florida, case number 17-SC-1712, thereby conferring jurisdiction on the Circuit Court of the Thirteenth Judicial District, in and for Hillsborough County, pursuant to Florida Statutes, Section 26.012 as well as 15 United States Code, Section 1692k(d).

4. Venue in this District is proper because Belajonas resides here and because SRS drafted and filed, or caused to be drafted and filed, the Debt Collection Lawsuit on Belajonas in this Circuit in an attempt to collect the Debt (as those terms are hereinafter defined).

5. This Court has personal jurisdiction over SRS because it filed a Complaint (hereinafter, "Debt Collection Lawsuit") in this Court, and served the Debt Collection Lawsuit on Belajonas, residing in Hillsborough County, Florida.

## PARTIES

6. At all material times herein, Belajonas was and is a natural person residing in Hillsborough County, Florida.

7. At all material times herein, SRS is a foreign limited liability company, not established under the laws of the state of Florida, that, itself and through its subsidiaries, regularly collects consumer debts due, or allegedly due, from consumers in Hillsborough County, Florida.

## GENERAL ALLEGATIONS

8. At all material times herein, Second is a "debt collector," as defined by 15 United States Code, Section 1692a(6).

9. More specifically, SRS is an entity that bought debts or was assigned debts allegedly due to others for collection. *See Crawford v. LVNV Funding, LLC,* 758 F.3d 1254,

2

2014 WL 3361226 (11th Cir. July 10, 2014) (holding that debt buyers are unequivocally debt collectors under the FDCPA).

10. SRS used interstate mail while engaging in a business, the principal purpose of which is the collection of consumer debts allegedly due another.

11. SRS is also an entity who regularly collects or attempts to collect, directly or indirectly, debts owed or due, or asserted to be owed or due, to another from consumers in Hillsborough County, Florida.

12. Belajonas is a "consumer," as defined by 15 United States Code, Section 1692a(3).

13. SRS's conduct, namely the drafting and use of the Debt Collection Lawsuit, as such term is defined and complained of herein, qualifies as "communication," as that term is defined by 15 United States Code, Section 1692a(2).

14. SRS's conduct, namely the drafting and use of the Debt Collection Lawsuit in an attempt to collect the Debt, as such term is defined and complained of herein, qualifies as a "representation" and/or "means" as those terms are used in the FDCPA, Sections 1692e, 1692f, and 1692g.

15. SRS acted by itself, or through its agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, lawyers and insurers.

16. At all times material herein, SRS attempted to collect an alleged Debt due from Belajonas, specifically an alleged delinquent consumer credit card account originally allegedly due to the Original Creditor, account number listed, but redacted, in SRS's Complaint, and subsequently allegedly acquired by SRS (hereinafter, "Debt").

3

17. At all material times herein, the Debt was consumer debt, obligations resulting from a transaction or transactions for goods or services, and was incurred primarily for personal, household, or family use.

18. SRS received or was assigned the Debt for collection—and at all times herein collected the Debt—after the Debt was in default.

19. All necessary conditions precedent to the filing of this action occurred or have been waived by SRS.

## FACTUAL ALLEGATIONS

20. On or Before December 24, 2014, Belajonas entered into a relationship governed by express terms and conditions (hereinafter, "Express Writing") with the Original Creditor. The Express Writing purportedly allowed Belajonas to incur charges on the open-end credit card account for consumer purchases.

21. On or before November 2014, the Original Creditor allegedly assigned the Debt to SRS.

22. Prior to being assigned to SRS, the Debt was an open-end credit account governed by the Truth in Lending Act, 15 United States Code, Sections 1601 *et seq.* and 1637 *et seq.* and 12 C.F.R. 225.5-225.16.

23. On or about January 12, 2017, SRS, via its counsel, filed the Debt Collection Lawsuit against Belajonas in an attempt to collect the Debt. Said lawsuit was filed in Small Claims Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, with assigned Case Number 17-SC-1712. Please see attached a true and correct copy of the Debt Collection Lawsuit and its attached exhibit labeled as Composite Exhibit "A." Belajonas ultimately received the Debt Collection Lawsuit.

24. The Debt Collection Lawsuit sought recovery of the Debt exclusively under the theories of Unjust Enrichment and Account Stated. Comp. Ex. A, pgs. 1-3, ¶¶ 1-17.

25. According to paragraphs six (6) of SRS's Debt Collection Lawsuit, SRS was the assignee of the Original Creditor. *See* Comp. Ex. A, pg. 1, ¶ 4.

26. In the Debt Collection Lawsuit, SRS alleged that "[a] final statement was sent to [Belajonas] ... on or around December 24, 2014 and [Belajonas] did not object to the balance due thereon, thereby agreeing to the balance." *See* Comp. Ex. A, pg. 2, ¶ 16.

27. Further, SRS asserted that the Debt Collection Lawsuit was authorized because, "it would be inequitable for [Belajonas] to retain the benefits bestowed upon it by [the Original Creditor] without paying the value thereof." *See* Comp. Ex. A, pg. 2, ¶ 14.

28. As such, SRS attempted to collect the Debt via the Debt Collection Lawsuit based upon only the *implied*[1] and *unwritten*[2] contractual and quasi-contractual theories of Account Stated and Unjust Enrichment, respectively.

29. Moreover, an account stated is created "when an account statement has 'been rendered to and received by one who made no objection thereto within a reasonable time,' [which creates] prima facie case for the correctness of the account ...." *See Farley*, 37 So.3d 936 at 937.

30. Thus, the document which creates the liability for an *implied* Account Stated theory is the statement rendered and not objected to in a reasonable amount of time.

31. On or about December 24, 2014, the account statement, which formed the alleged

---

[1] *See Burt v. Hudson & Keyse, LLC*, 138 So.3d 1193, 1196 (Fla. 5th DCA 2014) (holding an Account Stated "does not need to be explicit. [As w]hen a debtor has been issued an account statement and the debtor fails to object in a reasonable time ... an *implied* agreement" or an *implied* Account Stated is created); *see also 14th & Heinberg, LLC*, 43 So. 3d 877, 880 (Fla. 1st DCA 2010) (explaining that unjust enrichment is a "legal fiction which implies a contract").

[2] *See Farley*, 37 So.3d 936, 937-8 (Fla. 4th DCA 2010) citing *Whittington v. Stanton*, 63 Fla. 311; 58 So. 489, 491 (Fla. 1912) ("The cause of action for an account stated is based on 'the agreement of the parties to pay the amount due upon the accounting, and not any written instrument") (emphasis added); *see also May*, 700 So.2d 22, 28 (Fla. 2d DCA 1997) ("contracts may be implied...where there is no express contract" and "an implied contract will not be recognized when there is a writing dealing with the same subject.") (internal citations omitted).

5

basis for SRS's Account Stated claim, was allegedly rendered to Belajonas regarding the Debt (hereinafter, "Account Statement"). The Account Statement shows a balance of $0.00, twice. *See* Comp. Ex. A, pg. 4.

32. SRS alleged, however, that Belajonas "owes [Second] the amount of $1,072.59" under the account stated. *Id.* at pg. 2, ¶ 17.

33. Further, the amount of Debt sought in the Debt Collection Lawsuit included (at minimum) contractual fees (i.e., Total Fees Charged in 2014 $260.00) and contractual interest charged at a rate of 26.99% (i.e., Total Interest Charged in 2014 $174.41), as outlined in the account statement. *See* Comp. Ex. A. pg. 4.

34. In order to deviate from and charge interest at a rate other than that allowed by Florida Statutes, Section 687.01, however, a "special contract" is required.[3]

35. Additionally, a "special contract is always an express contract, 'one whose provisions are expressed and not dependent on implication.'" *See WPB, Ltd. v. Supran,* 720 So.2d 1091, 1092 (Fla. 4th DCA 1998) citing *Fitzpatrick v. Vermont State Treasurer,* 144 Vt. 204, 475 A.2d 1074, 1077 (1984).

36. In the Debt Collection Lawsuit and pursuant to its theories of recovery, SRS attempted to collect the Debt in an amount that included contractual fees and interest that could legally be charged in Florida in the absence of a special written contract.[4]

37. At no time prior to filing of this action did SRS assert a breach of contract claim in the Debt Collection Lawsuit filed against Belajonas, never alleging an express agreement as the

---

[3] *See Nelson v. Ameriquest Technologies, Inc.*, 739 So.2d 161, 168 (Fla. 3d DCA 1999) (holding that a "special contract" is required to deviate from the statutory interest rate) referencing *Celotex Corp. v. Buildex, Inc.*, 476 So.2d 294, 296 (Fla. 3d DCA 1985).

[4] *See* Fla. Stat.,§ 687, *et seq.*; *see also Nelson*, 739 So.2d 161, 168 (Fla. 3d DCA 1999) (holding "that absent proof of a written agreement between the parties for the higher rate of interest, interest accrues at the statutory rate") citing *Celotex Corp.*, 476 So.2d 294, 296 (Fla. 3d DCA 1985).

6

basis for the Debt and the fees or interest included and collected therein.

38. As such, SRS had no legal right to attempt to collect interest in the Debt Collection Lawsuit at a rate higher than that set by Florida Statutes, Section 687 *et seq.*

39. Further, SRS asserted that Belajonas has been unjustly enriched by an amount that included interest and fees, which were charges for which no money was actually advanced to Belajonas. *See* Comp. Ex. A, pg. 2, ¶ 15.

40. Because no interest or fees were advanced to Belajonas, Belajonas was not unjustly enriched by any interest and fees that accrued on the alleged Debt.

41. As such, SRS had no legal right to include in—or incident to—the Debt any fees and/or interest on the basis that Belajonas had been unjustly enriched by such funds that never actually benefitted Belajonas.

42. Furthermore, as stated above, SRS attempted to collect the Debt through the Debt Collection Lawsuit based upon only the *implied* and *unwritten* contractual and quasi-contractual theories of Account Stated and Unjust Enrichment, respectively.

43. Belajonas's alleged Debt, including the fees and interest charged and included therein, was based upon the express terms and conditions of a written document, namely the Express Writing.

44. SRS could not lawfully attempt to collect the Debt under implied contractual theories when the parties' relationship was governed by the express terms of a written agreement; SRS knew of the existence of a written agreement but chose to collect the Debt in an unfair, deceptive, and unlawful manner.

45. In fact, in the Debt Collection Lawsuit, SRS failed to specifically plead, yet alone prove, that the Original Creditor or SRS fully performed what was agreed to be done under the contract that established the account sued upon (i.e., the Debt).

46. SRS filed the Debt Collection Lawsuit in an attempt to collect the Debt from Belajonas.

47. Every year, SRS files many hundreds, if not thousands, of debt collection lawsuits in counties throughout the state of Florida.

48. Roughly ninety percent or more of these debt collection lawsuits result in default judgments against consumers.[5] SRS knows these statistics and plan on such results. As such, SRS regularly files debt collection lawsuits in an attempt to collect debt from consumers based on implied theories of recovery (i.e., Account Stated and Unjust Enrichment) when SRS knows that such debts are open-end credit account debts based upon writings that contains express terms and conditions that define the consumers' and original creditors' relationship.

49. Further, SRS knows that the debt being collected—like the Debt in Debt Collection Lawsuit—on its face and by its attachments contains and attempts to collect interest at a rate in excess of that allowed by Florida Statutes, Section 687.01 and Florida Statutes, Section 687.02-03 absent pleading and proving a special contract.

50. Despite this knowledge, in this case, SRS did not review or have in its possession the Express Writing that defines Belajonas's and Original Creditor's relationship at the time of filing the Debt Collection Lawsuit.

51. In fact, in many cases, such original documentation is not provided by the original creditors (e.g., the Original Creditor.) to the debt buyer (i.e., SRS), and per the terms of the contract selling the Debt to SRS, is not required to be provided. Further, it is disclosed in the

---

[5] Jon Leibowitz et al., U.S. Federal Trade Comm'n, *Repairing a Broken System: Protecting Consumers in Debt Collection Litigation and Arbitration* (2010), 7, available at https://www.ftc.gov/reports/repairing-broken-system-protecting-consumers-debt-collection-litigation; Peter A. Holland, Loyola Consumer L. Rev., *Junk Justice: A Statistical Analysis of 4,400 Lawsuits Filed by Debt Buyers*, (2014), 227, available at http://digitalcommons.law.umaryland.edu/cgi/viewcontent.cgi?article=2443&context=fac_pubs.

contract transferring the Debt to SRS that such Express Writing may not be in existence and available to the debt buyer, SRS.

52. SRS was aware of these facts at the time they drafted and filed Debt Collection Lawsuit in its attempt to collect the Debt from Belajonas and is a material reason why SRS sued Belajonas exclusively under the implied and unwritten contractual theories of Account Stated and Unjust Enrichment.

53. SRS's cost of staff and attorney time inherent in drafting, filing, litigating and proving a breach of contract claim in the Debt Collection Lawsuit far outweighs any benefit, especially when the same potential result may be more easily available under the implied and unwritten contractual theories of Account Stated and Unjust Enrichment, especially if not defended and a default judgment is obtained.

54. Nevertheless, SRS filed the Debt Collection Lawsuit in an attempt to collect the Debt, based upon theories that do not allow for recovery in the face of an acknowledged express writing that defines and controls the relationship of the debtor (i.e., Belajonas) and Original Creditor.

55. At the time SRS filed the Debt Collection Lawsuit, SRS had full knowledge that the relief sought under the implied and unwritten contractual theories of Account Stated and Unjust Enrichment, did not lawfully allow for collection of late fees or interest at a rate in excess of that allowed under Florida law in the absence of a special contract.

56. SRS undertook this action, namely the filing of the Debt Collection Lawsuit with the knowledge asserted above, believing that Belajonas would not understand their rights, would not have the means or the constitution to defend such Debt Collection Lawsuit, and would thereby be able to procure a default judgment based upon invalid and unlawful theories and in an

amount that includes interest not otherwise allowed under Florida law.

57. Furthermore, by suing under an implied and unwritten theories only, SRS attempted to strip consumers of their contractual rights and prevent consumers from invoking such rights, including but not limited to: arbitration, choice of law provisions, attorneys' fees, required notices, etc.

58. Belajonas seeks any and all attorneys' fees incurred in the underlying Debt Collection Lawsuit as an actual damage incurred in the FDCPA lawsuit. *See Kapoor v. Rosenthal*, 269 F.Supp.2d 408, 413 (S.D.N.Y. 2003), citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (holding that attorneys' fees incurred in defense of a collection case that is unlawful under the FDCPA are taxable as an actual damage in an affirmative FDCPA claim).

59. Belajonas retained Leavengood, Dauval, Boyle & Meyer, P.A. (herein, "Undersigned Counsel") for the purpose of pursuing this action against SRS, and Belajonas is obligated to pay her attorneys a reasonable fee for their services.

60. United States Code, Title 15, Section 1692k provides for the award of up to $1,000.00 statutory damages, actual damages,[6] costs, and an award of attorney's fees to Belajonas, should she prevail in this matter against Second.

61. As of the date of this Counterclaim, no final judgment regarding the Debt has been obtained by, or transferred to, SRS as SRS voluntarily dismissed its claim.

62. Any necessary conditions precedent to bring this action have either occurred, or have been excused by SRS.

---

[6] Belajonas seeks all attorneys' fees incurred in the underlying collection case as an actual damage incurred in the FDCPA lawsuit. *See Kapoor v. Rosenthal*, 269 F.Supp.2d 408, 413 (S.D.N.Y. 2003), citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (holding that attorneys' fees incurred in defense of a collection case that is unlawful under the FDCPA are taxable as an actual damage in an affirmative FDCPA claim).

## COUNT ONE:
## FAIR DEBT COLLECTION PRACTICES ACT –
## VIOLATION OF 15 UNITED STATES CODE, SECTIONS: 1692e, e(2)(A), and e(10)

Belajonas re-alleges paragraphs one (1) through sixty-two (62) as if fully restated herein and further state as follows:

63. SRS is subject to, and has violated the provisions of, 15 United States Code, Sections 1692e and e(10) by using any false, deceptive, or misleading means or representations in attempting to collect the Debt, and Section 1692e(2)(A) by falsely representing the character, amount, or legal status of the Debt.

64. Specifically, SRS's Debt Collection Lawsuit falsely represents the total amount of the Debt (i.e., the principal amount sought) to include interest at an unlawful rate and contractual fees, in an attempt to deceive and mislead Belajonas into paying more than is legally collectible on the Debt under the theories advanced in the Debt Collection Lawsuit.

65. Additionally, the Debt Collection Lawsuit falsely represented that Belajonas had been unjustly enriched for amounts never actually advanced by the Original Creditor. Moreover, such amounts would never have benefited Belajonas and thus were uncollectible under an Unjust Enrichment theory.

66. The effect of including interest at a rate of 26.99% and including such interest and contractual fees in the theories advanced, all of which were included in the total amount of the Debt allegedly due in the Debt Collection Lawsuit, was to unlawfully increase the total amount collected from Belajonas.

67. Further, the Debt Collection Case falsely represented the total amount of the Debt as $1,072.59, under an implied Account Stated theory which wholly hinges on the rendition of an account statement containing the correct balance. The Account Statement in this case, however,

shows a balance of $0.00, twice. This type of debt collection conduct has been sanctioned before.[7]

68. Furthermore, SRS's Debt Collection Lawsuit made the false, deceptive, and misleading representation that the Debt may be collected through a Florida court using only implied and unwritten contractual theories, when the Debt originated from an Express Writing. Florida law prohibits such Debt collection methodology.

69. Also, SRS's Debt Collection Lawsuit falsely represented the legal nature of Belajonas' alleged Debt by stripping Belajonas of her contractual rights in an attempt to prevent the invocation of such rights. SRS does this knowingly and in attempt to deceive consumers into not invoking their rights, and in the hopes of pushing as many debt collection lawsuits through Florida courts, at the lowest cost to Second and at the highest possible detriment to Florida consumers, is as possible.

70. Finally, SRS's Debt Collection Lawsuit falsely represented the character and legal status of the Debt by stating that SRS may collect an express written contract under implied contractual theories.

71. SRS knew it could not lawfully be afforded such relief in a Florida court.

72. SRS's above-referenced conduct constitutes the use of false, deceptive, or misleading representation or means in attempting to collect the Debt from Belajonas.

73. As such, Second has violated 15 United States Code, Sections 1692e and 1692e(10) when it used false, deceptive, or misleading representations or means in an attempt to collect the Debt, and Section 1692e(2)(A) by falsely representing the character, amount, or legal

---

[7] *Portfolio Recovery Associates, LLC v. Black*, 2015 WL 1505100 (S.C.Com.Pl. 5th Jud. Cir., Orangeburg Cty., March 9, 2015) (Trial Order) attached as Exhibit "B," (dismissing Plaintiff's case with prejudice and awarding sanctions for filing a frivolous lawsuit when Plaintiff's attached statement, which allegedly formed basis of Defendant's liability, showed a balance of $0.00).

12

status of Debt.

74. As a direct and proximate result of SRS's actions, Belajonas has sustained actual damages and statutory damages as defined by 15 United States Code, Section 1692k.

## COUNT TWO:
## FAIR DEBT COLLECTION PRACTICES ACT – VIOLATION OF 15 UNITED STATES CODE, SECTIONS 1692f and f(1)

Belajonas re-alleges paragraphs one (1) through sixty-two (62) as if fully restated herein and further state as follows:

75. SRS is subject to, and has violated the provisions of, 15 United States Code, Section 1692f by using unfair or unconscionable means in an attempt to collect the Debt and Section 1692f(1) by attempting to collect an amount not expressly authorized by the agreement creating the debt or permitted by law.

76. Specifically, SRS's Debt Collection Lawsuit constituted an unfair or unconscionable means by falsely representing the total amount of the Debt (i.e., the principal amount sought) to include interest at an unlawful rate and contractual fees, in an attempt to collect an amount from Belajonas into paying more than is legally collectible on the Debt under the theories advanced in the Debt Collection Lawsuit.

77. More specifically, within the Debt Collection Lawsuit, SRS attempted to collect the Debt in an amount that included in its principal, interest at the rate of 26.99%, which was not authorized under implied contractual theories and is expressly prohibited by Florida law in absence of pleading and prevailing on a special contract.

78. Additionally, the Debt Collection Lawsuit constituted an unfair or unconscionable means by falsely representing that Belajonas had been unjustly enriched for amounts never actually advanced by the Original Creditor. Moreover, such amounts would never have

13

benefited Belajonas and thus were uncollectible under an Unjust Enrichment theory.

79. The effect of including interest at a rate of 26.99% and including such interest and fees in the theories advanced, all of which were included in the total amount of the Debt allegedly due in the Debt Collection Lawsuit, was to unlawfully increase the total amount collected from Belajonas.

80. Also, the Debt Collection Lawsuit constituted false, unfair, and unconscionable means to collect the Debt through a Florida court using only implied and unwritten contractual theories, when the Debt originated from an Express Writing.

81. SRS's Debt Collection Lawsuit also constituted an unfair and unconscionable means by stripping Belajonas of her contractual rights in an attempt to prevent the invocation of such rights. SRS does this knowingly and in attempt to deceive consumers into not invoking their rights, and in the hopes of pushing as many debt collection lawsuits through Florida courts, at the lowest cost to SRS and at the highest possible detriment to Florida consumers, is as possible.

82. Furthermore, the Debt Collection Case falsely represented the total amount of the Debt as $1,072.59, under an implied Account Stated theory wholly premised upon the rendition of an account statement containing the correct balance. The Account Statement in this case, however, showed a balance of $0.00, twice. This type of conduct has been sanctioned before.[5]

83. Finally, SRS's Debt Collection Lawsuit falsely represented that the alleged Debt, which was governed by an express written contract, may be collected under implied contractual theories.

84. SRS knew it could not lawfully be afforded such relief in a Florida court.

85. SRS's above-referenced conduct constituted the use of unfair or unconscionable

---

[5] *Supra* fn. 12; *see also* Ex. B.

means in attempting to collect the Debt, and amounts not authorized or express prohibited in Florida, from Belajonas.

86. As such, SRS has violated 15 United States Code, Section 1692f by using unfair or unconscionable means in an attempt to collect the Debt and violated Section 1692f(1) by attempting to collect an amount not authorized under SRS's implied and unwritten agreement. Instead, such amount was expressly prohibited by Florida law.

87. As a direct and proximate result of SRS's actions, Belajonas has sustained actual damages and statutory damages as defined by 15 United States Code, Section 1692k.

## DEMAND FOR JURY TRIAL

Belajonas hereby demands a trial by jury on all issues triable by right.

## PRAYER FOR RELIEF

WHEREFORE, as a direct and proximate result of the SRS's actions and conduct, Belajonas respectfully requests entry of:

    a. Judgment against SRS for maximum statutory damages for violations of the FDCPA;

    b. Judgment against SRS for actual damages pursuant to the FDCPA in an amount to be determined at trial;

    c. An award of reasonable attorneys' fees and costs; and

    d. Any other such relief the Court may deem proper.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Belajonas hereby gives notice to SRS, and demands that it and its affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Respectfully submitted,

LEAVENLAW

*/s/ G. Tyler Bannon*
Ian R. Leavengood, Esq., FBN 0010167
Jordan T. Isringhaus, Esq., FBN 0091487
G. Tyler Bannon, Esq., FBN 0105718
Northeast Professional Center
3900 First Street North, Suite 100
St. Petersburg, FL 33703
Phone: (727) 327-3328
Fax: (727) 327-3305
collectiondefense@leavenlaw.com
jisringhaus@leavenlaw.com
tbannon@leavenlaw.com
*Attorneys for Plaintiff Belajonas*